**ADANTÉ D. POINTER, ESQ., SBN 236229**
**PATRICK M. BUELNA, ESQ., SBN 317043**
**TY CLARKE, ESQ., SBN 339198**
POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert St., Suite 208
Oakland, CA 94607
Tel: 510-929-5400
Website: www.LawyersFTP.com
Email: APointer@LawyersFTP.com
Email: PBuelna@LawyersFTP.com
Email: TClarke@LawyersFTP.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE ESTATE OF MAURICE MONK, brought by personal representative, NIA'AMORE MONK; NIA'AMORE MONK, an individual<br><br>Plaintiffs,<br>v.<br><br>ALAMEDA COUNTY, a municipal corporation; WELLPATH COMMUNITY CARE, LLC, a corporation; and DOES 1-50, inclusive.<br><br>Defendants. | Case No.: 3:22-cv-04037-TSH<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES**<br>(42 U.S.C. § 1983)<br><br>**JURY TRIAL DEMANDED** |

## INTRODUCTION

1.  When Maurice Monk was brought to Defendant Alameda County's Santa Rita Jail on October 11, 2021, he was arrested and being held after having a verbal disagreement for not wearing a mask on a bus and missing a court appearance for a minor non-violent misdemeanor. Despite his sister's efforts to alert Jail staff that Mr. Monk was under a doctor's care and taking a number of prescribed medications, the Jail's staff failed to provide the medications to Mr. Monk.

Foreseeably, his health quickly deteriorated, and the staff's failure ultimately robbed Mr. Monk of his life and the Plaintiffs of their loving father.

2. Indeed, Jail Staff found the 45 year-old football coach laying unresponsive in cell just over a month after he was initially brought to Santa Rita. This foreseeable yet readily preventable death was the result of Mr. Monk being denied adequate medical care despite his family's repeated efforts to ensure Jail staff gave him the medications he so desperately needed. Mr. Monk became the 57th death to occur at Santa Rita Jail since 2014 year. In fact, Mr. Monk was not even the only person to die that day at Santa Rita – adding another tally to the Jail's shameful record of outpacing every jail in the country for inmate deaths per capita.

## JURISDICTION

3. This action arises under Title 42 of the United States Code, Section 1983. Jurisdiction is conferred upon this Court by Title 28 of the United States Code, Sections 1331 and 1343. The unlawful acts and practices alleged herein occurred in Dublin, California in Alameda County, which is within this judicial district.

## PARTIES

4. Decedent MAURICE MONK (hereinafter "Decedent") was an adult, and died intestate, unmarried, and was the biological father of Plaintiff NIA'AMORE MONK.

5. Plaintiff ESTATE OF MAURICE MONK (hereinafter "Plaintiff Estate of Monk") brings this case through personal representative NIA'AMORE MONK. Plaintiff Estate of Monk brings these claims on behalf of Decedent pursuant to California Code of Civil Procedure §§ 377.20 et seq. and 377.60 et seq., which provide for survival and wrongful death actions. The wrongful death and survival claims survive the death of Decedent; both arise from the same wrongful act or neglect of another; and such claims are properly joined pursuant to California Code of Civil Procedure 377.62. Plaintiff Estate of Monk also brings their claims on the basis of 42 U.S.C. §§

1983 and 1988, the United States Constitution, and federal civil rights law. Plaintiff also brings these claims as Private Attorney General, to vindicate not only Decedent's rights, but also others' civil rights of great importance.

6. Plaintiff NIA'AMORE MONK (hereinafter "Plaintiff Monk") is a competent adult, a resident of California, and a citizen of the United States. Plaintiff Monk is the biological daughter of Decedent. Plaintiff Monk brings these claims individually on the basis of 42 U.S.C. §§ 1983 and 1988, the United States Constitution, and federal civil rights law. Plaintiff also brings these claims as Private Attorney General, to vindicate not only her rights, but also others' civil rights of great importance.

7. Defendant ALAMEDA COUNTY (hereinafter "Defendant COUNTY") is and at all times herein mentioned is a municipal entity duly organized and existing under the laws of the State of California that manages and operates the ALAMEDA COUNTY SHERIFF'S OFFICE and SANTA RITA JAIL. Defendant COUNTY is vicariously liable, pursuant to California Government Code §815.2, for the violation of rights by its employees and agents.

8. Defendant WELLPATH COMMUNITY CARE, LLC (hereinafter "Defendant WELLPATH") was at all times herein mentioned a Delaware corporation licensed to do business in California. Defendant WELLPATH provided medical, psychiatric, nursing, medication and health care to prisoners and detainees in Alameda County jails, pursuant to contract with the COUNTY OF ALAMEDA. On information and belief, WELLPATH and its employees and agents are responsible for making and enforcing policies, procedures, and training related to the medical care of prisoners and detainees in Defendant COUNTY OF ALAMEDA's jails..

9. Plaintiffs are ignorant of the true name and/or capacities of defendants sued herein as DOES 1 through 50, inclusive, and therefore sues said defendants by such fictitious names. DOES 1-50 are hereinafter referred to as "Defendant Jail Staff". Plaintiffs will amend this complaint to

allege the true names and capacities of Defendant Jail Staff when ascertained. Plaintiffs believe and allege that each of the Defendants Jail Staff are legally responsible and liable for the incident, injuries and damages hereinafter set forth. Each defendant proximately caused injuries and damages because of their negligence, breach of duty, negligent supervision, management or control, violation of public policy, and use of excessive force. Each defendant is liable for his/her personal conduct, vicarious or imputed negligence, fault, or breach of duty, whether severally or jointly, or whether based upon agency, employment ownership, entrustment, custody, care or control or upon any other act or omission. Plaintiffs will ask leave to amend this complaint.

10. In doing the acts alleged herein, Defendant Jail Staff acted within the course and scope of their employment for Defendant COUNTY and/or WELLPATH.

11. In doing the acts and/or omissions alleged herein, Defendants acted under color of authority and/or under color of law.

12. Due to the acts and/or omissions alleged herein, Defendants, and each of them, acted as the agent, servant, and employee and/or in concert with each of said other Defendants herein.

13. Plaintiff filed a timely government claim with Defendant COUNTY on February 9, 2022, which was rejected by operation of law.

**FACTUAL ALLEGATIONS**

14. On or about October 11, 2021, Maurice Monk was detained by Defendant Alameda County at Santa Rita Jail after police were called regarding a verbal argument between Mr. Monk and a bus driver. Mr. Monk was arrested after officers learned that he had a bench warrant for failing to appear in court, a non-violent misdemeanor.

15. Bail was set in Mr. Monk's case for $2,500. As Mr. Monk and his family were unable to afford this amount, he was forced to stay in Santa Rita Jail for over a month.

16. Prior to his incarceration, Mr. Monk was regularly taking a number of prescribed medications for high blood pressure, diabetes, and schizophrenia.

17. Upon Mr. Monk's incarceration, his sister, Elvira Monk, contacted Defendant Jail Staff to inform them of Mr. Monk's medical needs. She provided medical records and paperwork showing his prescribed medications and even brought said medications to the jail. However, Defendant Jail Staff rejected Elvira Monk's numerous attempts to get her brother the medication he needed, instead sending her through a series of unnecessary bureaucratic processes. She was repeatedly contacting Defendant Jail Staff and sending them medical documentation up until November 16, 2021—the day after Mr. Monk died—because they failed to advise her of her brother's passing.

18. As part of the prescribed treatment for his schizophrenia, Mr. Monk took regularly scheduled injections of the medication Halidol. He was scheduled for his next injection on or about November 9, 2021. Elvira Monk informed Santa Rita Jail staff of this fact, yet they did not make any attempt to provide Mr. Monk his medically-necessary Halidol injection.

19. In addition to the Halidol injection, Defendant Jail Staff did not provide Mr. Monk any of his prescribed medications for the entirety of his incarceration, which included time in a solitary cell, despite being aware that he needed them and that sudden cessation of the medications could cause significant health issues.

20. On or about the evening of November 15, 2021, Mr. Monk was found unresponsive in his cell. Medical personnel tried to provide life-saving measures, those efforts ultimately proved futile. Mr. Monk was pronounced dead later that night, 35 days after he was first brought to Santa Rita Jail.

21. On information and belief, Mr. Monk died of heart and/or blood pressure complications caused by the Defendant Jail Staff's outright refusal to provide him any of prescribed

medications. This paints a bleak picture of Mr. Monk's time in the Santa Rita Jail, a time in which he was mentally tortured and physically compromised by the Defendants' unconstitutional medical care (or lack thereof).

## MONELL ALLEGATIONS

22. Plaintiffs are informed, believe, and therein allege that Defendant Alameda County exhibits a pattern and practice of exposing pre-trial detainees to unconstitutional detention conditions and procedures at Santa Rita Jail and despite these incidents, none of the Sheriff's Deputies and/or other jail staff are ever found in violation of department policy or disciplined, even under the most questionable of circumstances. Defendant Alameda County's failure to discipline or retrain Santa Rita Jail staff is evidence of an official policy, entrenched culture and posture of deliberate indifference toward protecting citizen's rights and the resulting death and injuries is a proximate result of the Defendant Alameda County's failure to properly supervise its Deputies and/or other jail staff and ratify their unconstitutional conduct. Plaintiff is informed, believe, and therein allege that the following instances are examples of the Alameda County's pattern and practice of condoning misconduct by failure to discipline and/or train:

   a. In 2021, detainee Juan Jesus Chaidez was required to wear a colostomy bag on his abdomin, and medical staff was aware that Mr. Chaidez was prone to likely infection. A discharge from Chaidez's stomach was noted but left untreated as medical staff determined that Chaidez had a normal discharge with no infection. Due to medical neglect, Chaidez suffered a colitis infection inside his colon and pelvis. *Chaidez v. Santa Rita Jail, et al.*, (N.D. 2021) Case 3:21-cv-04240-RS.

   b. In 2021, detainee Terry Gordon was given medication for a neck/spine operation. Gordon informed the nurse and guard that he believed he received the incorrect medication because it tasted strange. The Santa Rita Jail nurse then used a guard's

flashlight to crush up the appropriate pill to cover up the fact that Gordon was given the wrong one. Due to taking the incorrect medication, Gordon suffered various side effects including throwing up, dizziness, and cold sweats. *Gordon v. Santa Rita Medical Staff*, Case 3:21-cv-03885-CRB

c. In 2017, detainee Peter Cole suffered from three badly abscessed teeth. Cole submitted three different medical requests for treatment from the Jail, but all were ignored. Cole was repeatedly told that he needed to wait and was only given pain medication for three days while he spent the rest of the time waiting in severe pain. Cole's face was badly swollen and infected for at least a month and a half until medical care was finally rendered. Due to the neglect, Cole suffered permanent disfiguration in his face, jaw, and gums. *Cole v. Santa Rita Jail*, (N.D. 2018) Case 4:18-cv-02874-HSG.

d. In 2014, Lawrence Bennetto suffered from severe bone disease and was prescribed morphine administered under a doctor's supervision. Once detained in Santa Rita Jail, Bennetto was denied his morphine by jail and medical staff. Bennetto's heath dramatically deteriorated and at one point was in convulsions for 43 hours. Bennetto lost 25 lbs., and almost all of the hair on his body. Despite his severe reactions, Santa Rita Jail staff did not give Bennetto his proper medication for 22 days, at which point Bennetto began to regain his health. *Lawrence Bennetto v. Santa Rita Jail*, (N.D. 2016) Case 3:16-cv-05464-SK.

e. In 2015, detainee Rickey Moore received improper medical treatment when he was given the wrong medications and doses for his diabetes and hypertension. Moore nearly died and suffered from swelling of his lower extremities while incarcerated

and after his release. *Moore v. Corizon Health Services, et al.*, (N.D. 2016) Case 4:16-cv-04195-DMR.

 f. In 2014, detainee James Duckett suffered from a long history of glaucoma, pain in both his eyes, and vision problems. While in Santa Rita, Duckett requested to be seen by an optometrist, but was merely put on a list for an extended period of time. When Duckett was finally seen, he was diagnosed with glaucoma but was denied his necessary eyedrops that he was prescribed outside of jail. *Duckett v. Corizon PHS, et al.*, (N.D. 2016) Case 4:16-cv-02293-KAW.

 g. In 2014, detainee Michael Davis told Santa Rita Jail medical staff during intake that he had arthritis in both knees and had trouble walking. Medical staff ordered Davis a walking cane and prescribed him a lower bunk bed, but Davis was given neither by jail staff, who made Davis continue to use his standard bunk bed, which resulted in Davis falling from his bed, injuring his knees and back. *Davis v. Santa Rita Jail, et al.*, (N.D. 2014) Case 3:14-cv-01468-EMC.

 **h.** In 2013, Santa Rita medical staff denied detainee Michael Henderson an inhaler for his asthma, metoprolol for his heart condition, and sertraline for his mental condition. Henderson was required to get a court order to even be seen by doctors at the jail. Once seen, medical staff only ordered an x-ray of Henderson and only gave him ointment for his taser wounds. Henderson was never given his medications. *Henderson v. Reina, et al.*, (N.D. 2013) Case 4:13-cv-00765-SBA.

23. Plaintiffs are informed, believe, and therein allege that Defendant Alameda County knew, had reason to know by way of actual or constructive notice of the aforementioned policy, culture, pattern and/or practice and the complained of conduct and resultant injuries/violations.

24.     Defendant County Alameda has a policy within Santa Rita Jail to place pre-arraignment, pretrial detainees suffering mental health disorders in solitary confinement cells for extended periods of time that are never washed, are caked with feces, drenched in urine, contain no sink, no toilet, and contain only a hole for inmates to defecate and urinate.

25.     Defendant County Alameda also has a policy to deny pre-arraignment, pretrial detainees suffering mental health disorders access to psychiatric treatment and medicine despite being notified their conditions requires this necessary medical treatment to prevent the inmates risks of suicide and to prevent their mental health condition from worsening and causing new and irrecoverable damage to their psyches. Defendant County does not even provide minimal access to psychiatric treatment by failing to using trained professionals to substantively evaluate pre-trial detainees for mental health disorders and/or securing them medications.

26.     Isolation cells are used as punishment for non-mentally ill inmates as part of the Santa Rita jail's disciplinary policy. The isolation cells serve a secondary purpose to segregate and hold mentally ill persons simply because they are mentally ill. Therefore, deputies placed Sweiha in these abject conditions no other prisoners that did not suffer mental health issues would be placed without having done something to deserve such a punishment and prior to any arraignment for the alleged criminal wrongdoings.

27.     Defendant County Alameda has a policy of using isolation cells as form of punishment for mentally ill inmates and other inmates. Disciplinary Isolation is defined in Defendants' policies as "punitive segregation from the general jail population and restricted privileges for an inmate who has committed a serious rule violation." Such "serious rule violations" include being generally disrespectful, excessive whistling or other noise, possessing unauthorized clothing, reporting to a program late, failing to cooperate with work or education programs, possessing more than 15 vending machine tokens, or failing to return a tray after meal time.

Individuals in Disciplinary Isolation are permitted to leave their cells for up to one hour a day, five days a week. There is no cap on the use of Disciplinary Isolation and prisoners may be held in Disciplinary Isolation for more than 30 days, even for a single rule violation, where authorized by the Commanding Officer at the Jails.

28. Alameda County's use of these isolation cells has had tragic consequences and, over the last five years, at least thirty-three individuals incarcerated in the Alameda County Jails have died, including thirteen individuals who committed suicide with many more unsuccessful attempts. These deaths are not isolated tragedies but rather are indicative of the harsh and unconstitutional conditions in the Santa Rita Jail.

29. By Jail policy, prisoners can be confined for up to 72 hours in these cells. Yet it is customary for prisoners to be forced to stay in such cells for a week or more at a time. Conditions so bad, prisoners have stopped reporting suicidal feelings to staff in order to avoid being thrown into safety cells.

30. For example, in 2016, Alameda County Sheriff's Deputies Sarah Krause and Stephen Sarcos have also been charged and arrested for weaponizing feces and urine to punish a mentally ill inmate.

31. And in 2018, eight inmates filed a suit against Alameda County for unconstitutional use of isolation cells on mentally-ill persons, the isolation cells being caked in feces and urine with no furniture or toilet, and denial of even minimal access to psychiatric treatment and medication.

## DAMAGES

32. As a direct and proximate result of each of the Defendant's deliberate indifference to Decedent's obvious medical needs and distress, Decedent and Plaintiff suffered injuries, emotional

distress, fear, terror, anxiety, and loss of sense of security, dignity, and pride as United States Citizens.

33. As a direct and proximate result of each Defendants' act and/or omissions as set forth above, Plaintiffs sustained the following injuries and damages, past and future, among others:

  a. Wrongful death of MAURICE MONK;
  b. Hospital and medical expenses;
  c. Coroner's fees, funeral and burial expenses;
  d. Loss of familial relationships, including loss of love, companionship, comfort, affection, society, services, solace, and moral support and loss of familial association;
  e. Pain and Suffering, including emotional distress (by Plaintiff Monk, based on her individual §1983 claim for loss of familial association;
  f. MAURICE MONK's conscious pain and suffering, pursuant to federal civil rights law (Survival claims);
  g. MAURICE MONK's loss of life, pursuant to federal civil rights law;
  h. Violation of constitutional rights; and
  i. All damages, penalties, and attorneys' fees and costs recoverable under 42 U.S.C. §§ 1983, 1988; California Civil Code §§ 52, 52.1, California Code of Civil Procedure § 1021.5, and as otherwise allowed under California and United States statutes, codes, and common law.

34. The conduct of Defendant Jail Staff was malicious, wanton, oppressive, and in reckless disregard of the rights and safety of MAURICE MONK, Plaintiff, and the public. Plaintiff is therefore entitled to an award of punitive damages against Defendant DOES 1-50.

## CAUSES OF ACTION

**FIRST CAUSE OF ACTION**
**(Fourteenth Amendment – Deliberate Indifference under 42 U.S.C. Section 1983)**
*(Plaintiff ESTATE OF MONK as successor-in-interest to Decedent against Defendant DOES 1-25)*

35. Plaintiff hereby re-allege and incorporates by reference each and every paragraph of this Complaint.

36. By the actions and omissions described above, Defendants DOES 1-50 violated 42 U.S.C. §1983, depriving Decedent of the following clearly established and well-settled constitutional rights protected by the Fourteenth Amendment to the United States Constitution:

   a. The right to be free from deliberate indifference to Decedent's serious medical needs while in custody as secured by the Fourteenth Amendment.

37. Defendants DOES 1-50 subjected Decedent to their wrongful conduct, depriving Decedent of rights described herein with reckless disregard for whether the rights and safety of Decedent would be violated by their acts and/or omissions.

38. As a result of their misconduct, Defendants DOES 1-50 are liable for Decedent's injuries and/or damages.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

**SECOND CAUSE OF ACTION**
**(Fourteenth Amendment – Familial Loss under 42 U.S.C. Section 1983)**
*(Plaintiff NIA'AMORE MONK individually against Defendants DOES 1-25)*

39. Plaintiffs hereby re-allege and incorporate by reference each and every paragraph of this Complaint.

40. By the actions and omissions described, Defendants DOES 1-50 violated 42 U.S.C. § 1983, depriving Plaintiff of the following clearly established and well-settled constitutional rights protected by the Fourteenth Amendment of the United States Constitution including:

   a. Right to familial association.

41. Defendant DOES 1-50 subjected Decedent to their wrongful conduct, thereby depriving Decedent and Plaintiff of the rights described herein with reckless disregard for whether the rights and safety of Plaintiff and others would be violated by their acts and/or omissions. Defendant DOES 1-50 were deliberately indifferent to Decedent's serious medical needs, thereby depriving Plaintiff of her familial relationship with her father.

42. As a direct and proximate result of Defendant DOES 1-50's acts and/or omissions as set forth above, Plaintiff sustained injuries and damages as set forth herein.

43. Defendant DOES 1-50's conduct entitles Plaintiff to punitive damages and penalties allowable under 42 U.S.C. §1983.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

**THIRD CAUSE OF ACTION**
**(Supervisory and Municipal Liability for Unconstitutional Custom or Police Practice – 42 U.S.C. section 1983 (Monell))**
*(Plaintiffs against Defendants COUNTY, WELLPATH and DOES 26-50)*

44. Plaintiffs hereby re-allege and incorporate by reference each and every paragraph of this Complaint.

45. Plaintiffs are informed and believe and therein allege that the COUNTY OF ALAMEDA and WELLPATH high-ranking officials, including DOES 26-50, knew and/or reasonably should have known that Santa Rita Jail staff, including Alameda County Sheriff's Deputies and jail medical staff, exhibits a pattern and practice of improper and inadequate medical treatment for detainees, including depriving them of necessary medical treatment and medications, and despite these incidents, none of the Santa Rita Jail medical staff or employees of the Santa Rita Jail are found to be in violation of jail policy or disciplined or retrained, even under the most questionable of circumstances. COUNTY OF ALAMEDA & WELLPATH'S failure to discipline or retrain medical staff is evidence of an official policy, entrenched in a deliberate indifference for the safety, health, and wellbeing of detainees, and the resulting deaths and injuries are a proximate

result of the COUNTY OF ALAMEDA & WELLPATH's failure to properly supervise its medical staff and ratify their unconstitutional conduct. Plaintiffs are informed, believe, and therein allege that the instances previously discussed in the *Monell Allegations* section) are examples of the COUNTY OF ALAMEDA & WELLPATH'S pattern and practice of condoning misconduct by failure to discipline, retrain, and supervise.

46. Despite having such notice, Plaintiffs are informed and believe and thereon allege that Defendants, and Does 26-50, and/or each of them, approved, ratified, condoned, encouraged and/or tacitly authorized the continuing pattern and practice of misconduct and/or civil rights violations by said Santa Rita medical staff and/or employees.

47. Plaintiffs are further informed and believe and thereon allege that as a result of the deliberate indifference, recklessness, and/or conscious disregard of the misconduct by Defendants and Does 1-50, and/or each of them, encouraged these medical staff and/or employees to continue their course of misconduct, resulting in the violation of Decedent's and Plaintiffs' rights as alleged herein.

48. The unconstitutional actions and/or omissions of Does 1-50, as well as other medical staff employed by or acting on behalf of Defendant COUNTY OF ALAMEDA & WELLPATH on information and belief, were pursuant to the following customs, policies, practices, and/or procedures of the Santa Rita Jail stated in the alternative, which were directed, encouraged, allowed, and/or ratified by policy making officers for the COUNTY OF ALAMEDA & WELLPATH:

    a. To cover-up violations of constitutional rights by any or all of the following:

        i. by failing to properly investigate and/or evaluate complaints or incidents of improper or inadequate medical treatment;

        ii. by ignoring and/or failing to properly and adequately investigate and discipline unconstitutional or unlawful activity; and

        iii. by allowing, tolerating, and/or encouraging medical staff to make false statements, file false reports, and/or withhold or conceal material information.

    b. To allow, tolerate, and/or encourage a code of silence among Santa Rita medical staff and employees whereby medical staff and/or employees do not provide adverse information against fellow employees;

    c. To use or tolerate inadequate, deficient, and improper procedures for handling, investigating, and reviewing complaints of misconduct by medical staff and employees;

    d. To fail to have and enforce necessary, appropriate, and lawful policies, procedures, and training programs to prevent or correct the unconstitutional conduct, customs, and procedures described in this Complaint, with deliberate indifference to the rights and safety of Plaintiff and other detainees, and in the face of an obvious need for such policies, procedures, and training programs to prevent reoccurring and foreseeable violations of rights of the type described herein.

    e. To have in place trainings, policies and procedures that deprive inmates & detainees of prescribed medications despite knowledge of their necessity and the risks of injury/death involved with depriving and/or delaying the administration of medications

49. Defendants COUNTY OF ALAMEDA & WELLPATH and Does 26-50 failed to properly train, instruct, monitor, supervise, evaluate, investigate, and discipline Does 1-25, and other Santa Rita Jail personnel, with deliberate indifference to Plaintiffs' and Decedent's constitutional rights, where were thereby violated as described above.

50. The aforementioned customs, policies, practices, and procedures, the failures to properly and adequately train, instruct, monitor, supervise, evaluate, investigate, and discipline, as well as the unconstitutional orders, approvals, ratification and toleration of wrongful conduct of Defendant COUNTY OF ALAMEDA & WELLPATH and Does 26-50, were a moving force and/or a proximate cause of the deprivations of Plaintiffs' and Decedent's clearly-established and well-settled constitutional rights in violation of 42 U.S.C. §1983, as more fully set forth in Cause of Action 1-3, above.

51. Defendants subjected Plaintiffs and Decedent to their wrongful conduct, depriving Plaintiffs and Decedent of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Plaintiffs and Decedent and others would be violated by their acts and/or omissions.

52. As a direct and proximate result of the unconstitutional actions, omissions, customs, policies, practices and procedures of Defendants COUNTY OF ALAMEDA & WELLPATH and Does 26-50 as described above, plaintiffs sustained serious and permanent injuries and are entitled to damages, penalties, costs and attorneys' fees as set forth in paragraphs 21-23 above.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

**FOURTH CAUSE OF ACTION**
**(Title II of American with Disabilities Act)**
*(Plaintiffs against Defendant COUNTY & WELLPATH)*

53. Plaintiffs hereby re-allege and incorporate by reference each and every paragraph of this Complaint.

54. As against Defendants COUNTY, WELLPATH and/or DOES 1-50, the Defendants failed to reasonably accommodate Plaintiff's schizophrenia under Title II of the Americans with Disabilities Act and from excluding qualified individuals from participating in or denying benefits and services provided by Defendant COUNTY & WELLPATH; or from otherwise discriminating

against such qualified individuals with symptoms of disability recognized under Title II of the Americans with Disabilities Act, resulting in refusal to adequately accommodate Decedent's disability during the course of the subject-incident. Defendants COUNTY, WELLPATH and DOES 1-50 were informed of Decedent's disability repeatedly by Decedent's family and were provided medical records to this effect. Defendants COUNTY, WELLPATH and DOES 1-50 knew or should have known that depriving Decedent of all of his prescribed medications and forcing a sudden cessation in the usage of said medications would foreseeably cause significantly more injury because of Decedent's disability than would be suffered by other members of the public. As a result of Defendants COUNTY, WELLPATH and DOES 1-50 refusing to reasonably accommodate Decedent's disability, Decedent died while in the custody of Defendant COUNTY & WELLPATH.

55. As against Defendant COUNTY, WELLPATH and DOES 1-50, the Defendants knew and/or had reason to know of Decedent's disability and were provided the prescribed medication that Decedent needed by members of Decedent's family, yet nonetheless elected to continue depriving Decedent of his medication.

56. The aforementioned conduct of Defendants COUNTY, WELLPATH and DOES 1-50, in failing to reasonably accommodate Plaintiff's disability, discriminated against Plaintiff by reason of his recognized disability.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

**FIFTH CAUSE OF ACTION**
**(Negligence & Wrongful Death)**
*(Plaintiffs individually and as successor-in-interest against Defendants WELLPATH, COUNTY and DOES 1-50)*

57. Plaintiffs hereby re-allege and incorporate by reference each and every paragraph of this Complaint.

58. At all times, Defendants DOES 1-50 owed Plaintiffs and Decedent the duty to act with due care in the execution and enforcement of any right, law, or legal obligation.

59.   At all times Defendants DOES 1-50 owed Plaintiffs and Decedent the duty to act with reasonable care.

60.   These general duties of reasonable care and due care owed to Plaintiffs and Decedent by Defendants DOES 1-50 include but are not limited to the following specific obligations:

   a. To provide medical attention to Decedent's serious medical needs;
   b. To refrain from abusing their authority granted them by law;
   c. To refrain from violating Plaintiff and Decedent's rights guaranteed by the United States and California Constitutions, as set forth above, and as otherwise protected by law.

61.   Defendants, through their acts and omissions, breached each and every one of the aforementioned duties owed to Decedent and Plaintiff.

62.   Defendant COUNTY and WELLPATH is vicariously liable for the wrongful acts and omissions of its employees and agents pursuant to Cal. Gov. Code section 815.2.

63.   As a direct and proximate result of Defendants' negligence, Plaintiff and Decedent sustained injuries and damages, Cal. Code of Civ. Proc. §§ 377.20 et seq., 377.60 et seq., 1021.5, and against each and every Defendant is entitled to relief as set forth above.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth

**SIXTH CAUSE OF ACTION**
**(Violation of the Bane Act (Cal. Civ. Code § 52.1))**
*(Plaintiffs against Defendants WELLPATH, COUNTY and DOES 1-50)*

64.   Plaintiffs hereby re-alleges and incorporates by reference each and every paragraph of this Complaint.

65.   Plaintiffs brings their "Bane Act" claim individually for direction violation of her own rights.

66.     By their conduct described herein, Defendants DOES 1-50, acting in concert/conspiracy, as described above, violated Plaintiff's rights under California Civil Code §52.1, and the following clearly-established rights under the United States Constitution and the California Constitution:

    a.  Plaintiff's constitutional right to familial association with her father in violation of the Fourteenth Amendment.

67.     All of Defendants' violations of duties and rights were volitional, intentional acts, done with reckless disregard for Plaintiff's rights; none was accidental or merely negligent.

68.     Defendant COUNTY & WELLPATH is vicariously liable, pursuant to Cal. Gov. Code § 815.2, for the violation of rights by its employees and agents.

69.     As a direct and proximate result of Defendants' violations of California Civil Code §52.1 and of Plaintiff's rights under the United States and California Constitutions, Plaintiff sustained injuries and damages, and against all Defendants and is entitled to relief as set forth above, including punitive damages against Defendants DOES 1-50, and including all damages allowed by Cal. Civ. Code §§ 52, 52.1, and California law, not limited to costs, attorneys' fees, treble damages, and civil penalties.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth

## JURY DEMAND

70.     Plaintiff hereby demands a jury trial in this action.

## PRAYER

WHEREFORE, Plaintiffs pray for relief as follows:

    1.  For general damages in a sum to be proven at trial;

2. For special damages, including but not limited to, past, present, and/or future wage loss, income and support, medical expenses and other special damages in a sum to be determined according to proof;

3. For punitive damages against Defendant DOES 1-50 in a sum according to proof;

4. For reasonable attorney's fees pursuant to 42 U.S.C. § 1988 and § 794 (a); Cal. Code of Civ. Proc. §§ 377.20 et seq., 377.60 et seq., 1021.5, Cal. Civil Code §§ 52 et seq., 52.1, and as otherwise may be allowed by California and/or federal law

5. Any and all permissible statutory damages;.

6. For injunctive relief, including but not limited to, changing the medical response procedures, policies and guidelines for attending to detainees and inmates psychiatric and health care medical needs;

7. For the cost of suit herein incurred; and

8. For such other and further relief as the Court deems just and proper.

//
//
//
//

Dated: July 27, 2022         POINTER & BUELNA, LLP
                             LAWYERS FOR THE PEOPLE

                             /s/ Patrick Buelna
                             PATRICK BUELNA
                             Attorney for PLAINTIFF