UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTATE OF MAURICE MONK, et al., <br><br> Plaintiffs, <br><br> v. <br><br> WELLPATH COMMUNITY CARE, LLC, et al., <br><br> Defendants. | Case No. 22-cv-04037-TSH <br><br> **ORDER ENFORCING SETTLEMENT AGREEMENTS** <br><br> Re: Dkt. No. 167 |

## I.    INTRODUCTION

This case arises from the death of Maurice Monk, a pretrial detainee, at the Santa Rita Jail. His daughter and son, Nia'Amore Monk and Kyse Monk, sue as successors-in-interest on behalf of the Estate of Maurice Monk. Nia'Amore and Kyse also bring individual claims. Defendants[1] move for an order upholding the standing of both Nia'Amore and Kyse to bring claims on behalf of the Estate, and to confirm the enforceability of their settlement agreements with Defendants. ECF No. 167. Kyse has filed an opposition (ECF No. 169) and Defendants have filed a reply (ECF No. 172). Nia'Amore has also filed a Reply. ECF No. 173. Yesterday the Court issued some questions for the parties, to which Defendants and Kyse have responded. ECF Nos. 174, 176, 177. The Court finds this matter suitable for disposition without oral argument. *See* Civ. L.R. 7-1(b). For the reasons stated below, the Court **GRANTS** the motion in part.[2]

---

[1] Defendants are Wellpath, LLC, California Forensic Medical Group, Jonnah Calabaio, Harmeet Dhatt, David Donoho, Chisa Earl, Ranjeet Kaur, Joseph Lopez, Kathleen Martinez, Theresa Mai, Hyun Choi, and Jacqueline Jallorina.

[2] The parties consent to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). ECF Nos. 12, 18, 26, 38, 105, 146-47.

## II.    BACKGROUND

On October 11, 2021, Maurice Monk was taken into Santa Rita Jail's custody because he missed a court appearance and could not afford to make bail.  Third Am. Compl. ¶¶ 35-36, ECF No. 139.  According to the complaint, over the course of the 34 days that Mr. Monk was at Santa Rita Jail, medical and law enforcement staff denied him adequate medical care, were callous and indifferent to his mental and physical wellbeing and observed him lying face down on his bunk for three days while unopened meals, water and medication gathered at the door of his cell.  Id. ¶¶ 37-115.  On the evening of November 15, Mr. Monk was discovered to have died, though Plaintiffs assert that it is likely he had died well before that time.  Id. ¶¶ 116-24.

On July 11, 2022, Nia'Amore Monk, Maurice Monk's biological daughter, filed a complaint for wrongful death and survival actions both individually and on behalf of the Estate as its personal representative against Defendant Alameda County.  ECF No. 1.  On July 27, 2022, Nia'Amore filed a First Amended Complaint, again asserting claims individually and on behalf of the Estate, this time against Defendants Alameda County as well as Wellpath Community Care, LLC.  ECF No. 10.

On January 17, 2023, Kyse Monk, the biological son of Maurice Monk and Nia'Amore's brother, filed a Motion to Intervene in this action as a plaintiff, individually and as a representative of the Estate, through his Guardian Kandi Stewart.  ECF No. 34.  In his motion, Kyse acknowledged that Nia'Amore's lawsuit included survival claims brought in her capacity as the Estate's personal representative.  Id. at 4:13-19.  He similarly asserted an interest in the Estate's potential survival claims as an heir and successor-in-interest.  Id. at 4:21-23.  The Court granted Kyse's motion on February 1, 2023, ECF No. 39, after which, on February 12, 2023, Kyse filed his individual wrongful death claims against Defendants Alameda County and Wellpath Community Care, LLC, and joined in Nia'Amore's claims as set forth in the First Amended Complaint, asserting his right to sue as a successor in interest.  ECF No. 40.

On October 6, 2023, Nia'Amore and Kyse jointly filed a Second Amended Complaint, again asserting claims individually and on behalf of the Estate as successors-in-interest, against Alameda County and Wellpath Defendants.  ECF No. 70.  They filed the operative Third

1  Amended Complaint on September 4, 2024, alleging five causes of action: (1) Fourteenth

2  Amendment - Deliberate Indifference pursuant to 42 U.S.C. § 1983; (2) Fourteenth Amendment –

3  Familial Loss pursuant to 42 U.S.C. § 1983; (3) Supervisory and Municipal Liability for

4  Unconstitutional Custom or Police Practice – 42 U.S.C. § 1983 (*Monell*) (4) Negligence and

5  Wrongful Death and (5) violation of the Bane Act pursuant to Cal. Civ. Code § 52.1.  Third Am.

6  Compl. ¶¶ 130-62.

7      In 2023 both siblings jointly settled all claims—individually and on behalf of the Estate—

8  against former Defendant Alameda County for $7,000,000.  ECF No. 72.  Following that

9  resolution, Plaintiffs continued litigating against the remaining Defendants until January 23, 2025,

10  when Kyse reached a tentative settlement with Defendants for $250,000 during mediation with

11  Judge Raul Ramirez.  Cardinale Decl. ¶ 3 & Ex. 1, ECF No. 167-1; Kyse Monk Decl. ¶ 4, ECF

12  No. 177 ("On January 23, 2025, I participated in a mediation proceeding during which a tentative

13  settlement was reached with Defendants.").  Two months later, on March 31, 2025, Nia'Amore

14  reached a settlement with Defendants for $2,300,000.  *Id.* ¶ 5 & Ex. 2.  Both Plaintiffs executed

15  their respective Settlement Agreements and Releases in March 2025.  *Id.* ¶¶ 4, 6 & Exs. 1-2.

16  Under the terms of these agreements, Defendants must pay Kyse by May 26, 2025 and Nia'Amore

17  by June 1, 2025.  *Id.*

18      According to Paul A. Cardinale, Defendants' counsel, on April 30 he received a telephone

19  call from Jerome Clay, counsel for Kyse Monk, during which Mr. Clay stated that Nia'Amore and

20  her attorney lacked authority to file a lawsuit on behalf of the Estate because she had not initiated

21  probate proceedings to become a representative of the Estate.  *Id.* ¶ 7.  Mr. Clay also revealed that

22  he had recently initiated probate proceedings for the Estate, to appoint his now-adult client, Kyse,

23  as the administrator of the Estate.  *Id.*  Mr. Clay has since initiated probate proceedings and filed a

24  petition to appoint Kyse the administrator of the Estate, with a hearing set for June 6, 2025—after

25  both settlement payments are due.  *Id.* ¶ 8.

26      On May 5, 2025, Nia'Amore filed a declaration stating she is Maurice Monk's co-

27  successor-in-interest as defined in California Code of Civil Procedure section 377.11, and that she

28  succeeds to his interest in this action.  ECF No. 163.  Nia'Amore stated Kyse has an equal right to

1  commence the action as the co-successor-in-interest.

2      On May 6, 2025, Kyse filed a Notice of Pendency of Other Proceeding, disclosing that he

3  had filed a Petition for Probate on April 17, 2025.  ECF No. 164.  That same day, Kyse also filed a

4  declaration stating he is Maurice Monk's co-successor-in-interest as defined in California Code of

5  Civil Procedure section 377.11.  ECF No. 165.

6      On May 7, 2025, Kyse filed an Objection to Nia'Amore's declaration, arguing it is

7  deficient under California Code of Civil Procedure section 377.32 for failing to attach Mr. Monk's

8  death certificate and for failing to mention the newly filed probate case.  ECF No. 166.  Kyse also

9  argued that the pending probate proceeding nullified Nia'Amore's standing as successor-in-

10  interest.

11     Defendants filed the present motion on May 12, 2025.  Defendants argue they will suffer

12  irreparable harm if the Court does not uphold Plaintiffs' standing and the validity of the parties'

13  settlement agreements prior to the time that the payments are due.

## III.  DISCUSSION

### A.  Standing

16     None of the parties have explained what standing has to do with the validity of the

17  settlement agreements, and Defendants now acknowledge that the two subjects are unrelated.

18  ECF No. 176 (Second Cardinale Decl. ¶ 5).  Provided the settlement agreements are valid

19  contracts under California law, the merits of Plaintiffs' claims and whether they have standing to

20  assert them are entirely irrelevant.  Questions about a plaintiff's standing can sometimes be

21  complicated and can raise factual disputes all the way through trial – for example, who owns the

22  patent, or whether a disabled plaintiff intends to return to the defendant's store.  There is no rule

23  that such cases cannot be settled until standing is fully litigated.  A settlement agreement is a

24  matter of contract, and a deal to pay money to get rid of bothersome litigation can be a perfectly

25  good contract, even if one reason the litigation was bothersome was a belief that when all the

26  evidence came out, it might be clear that the plaintiff lacked standing.

27     For this Court to decide whether Plaintiffs have standing to assert claims as their father's

28  successors in interest seems particularly unnecessary because there is obviously an Article III case

4

or controversy here. It is undisputed that Plaintiffs have Article III standing to assert, for example, their second cause of action for familial loss, which arises under federal law. So, we have a lawsuit that is properly in federal court by Plaintiffs who have Article III standing to assert at least one of their claims. This is a real case, and real cases can be settled. And once they are settled, we don't need to go back and figure out whether the plaintiffs had standing to assert every claim alleged in the complaint, whether each of the claims had merit, what the damages are, and so on. All of that effort is avoided by the settlement. Indeed, not having to spend money on expensive fights to answer those questions – like the fight the litigants are having right now about successor-in-interest standing – is often a reason to settle.

This is not a case like a class action where settlement implicates the rights of non-parties, and you can see that by reading the settlement agreements. Kyse's defines the "Plaintiff Releasors" as "Plaintiff Intervenor [i.e., Kyse], by and through his guardian Kandi Stewart, on behalf of himself and his representatives, agents, estate, executors, administrators, successors, heirs, and assigns." Cardinale Decl., Ex. 1, ¶¶ 1.1, 1.2. Kyse's release is on behalf of himself and others whose claims derive from him. That's also true of Nia'Amore's releases. Cardinale Decl., Ex. 2, ¶ 1.1.[3]

And look at what they are releasing: "any and all past, present or future claims, demands, obligations, actions, causes of action, rights, damages, costs, expenses and compensation of any nature whatsoever, whether based on a tort, contract, constitutional claim, or other theory of recovery, which Plaintiff Intervenor [or Plaintiff, in Nia'Amore's settlement] has, or which may hereafter accrue or otherwise be acquired, on account of, or may in any way grow out of the Incident, including, without limitation, any and all known or unknown claims, which allegedly resulted from the alleged acts of Defendant [or Wellpath], and/or which are or could have been alleged or asserted against Defendant [or Wellpath] in the Action." Cardinale Decl., Ex. 1, ¶ 1.1, 1.2 & Ex. 2 ¶¶ 1.1, 1.2. Both agreements also have 1542 waivers. Cardinale Decl., Ex. 1, ¶ 1.5 &

---

[3] Paragraph 1.2 of Nia'Amore's settlement agreement was lifted from Kyse's settlement so recites his releasing parties, but it is obvious that the releasing parties in paragraph 1.2 are meant to be the same ones as in paragraph 1.1.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Ex. 2 ¶ 1.5.  These are broad but also fairly standard releases, giving the Defendants sweeping

2    assurance that these two Plaintiffs will never be able to sue them again for anything related to the

3    death of their father.

4         We don't need to know what all of those claims were.  It doesn't matter whether Plaintiffs

5    have standing to assert survival claims as their father's successors in interest pursuant to

6    California Code of Civil Procedure sections 377.30, 377.31 and 377.32.  They have certainly

7    purported to assert such claims in this lawsuit, and their broad releases clearly encompass those

8    claims.  In the settlements, both Plaintiffs warrant that no other person has the claims referred to in

9    the agreement and that Plaintiffs have not conveyed their claims to others.  But since Plaintiffs are

10   just settling their *own* claims, that is a pretty minimal warranty, and if it turns out they don't

11   possess any survival claims, the warranty won't be false.  Whatever claims they had against

12   Defendants arising from their father's death – that is what they settled.

13        It is true that Nia'Amore's settlement agreement refers to her as "Nia'Amore Monk,

14   individually and as Successor in Interest to the Estate of Maurice Monk ('Plaintiff')."  Cardinale

15   Decl., Ex. 2.  That still doesn't mean she's settling on behalf of someone else.  She's settling any

16   claims she may have individually (such as the second cause of action for familial loss) or as a

17   successor in interest to her father.  *See* Cal Code Civ. Proc. § 377.30 ("A cause of action that

18   survives the death of the person entitled to commence an action or proceeding passes to the

19   decedent's successor in interest . . .").  The release language makes clear that she settled *her*

20   claims, as Kyse settled *his*.

21        To understand that Nia'Amore and Kyse are settling only their own claims, and not

22   somebody else's claims, ask yourself these questions:  What if Maurice Monk has a third child?

23   What if the probate court appoints the third child as the decedent's "personal representative" under

24   Code of Civil Procedure section 377.30, who then sues all the same Defendants for the same

25   things, and Defendants do not achieve the peace they were hoping for in these settlements?  That

26   wouldn't affect the validity of these settlement agreements.  The Defendants settled with *these*

27   Plaintiffs, not with anybody else, and they knew that.  The reference in the third amended

28   complaint to "Plaintiff ESTATE OF MAURICE MONK (hereinafter 'Plaintiff ESTATE') brings

this case through its successors-in-interest NIA'AMORE MONK and KYSE MONK. Plaintiff ESTATE brings these claims on behalf of Decedent pursuant to California Code of Civil Procedure §§ 377.20 et seq. and 377.60 et seq., which provide for survival and wrongful death actions." (TAC ¶ 15) is just a reference to the survival claims that Nia'Amore and Kyse can assert, whatever they may be. Remember, Code of Civil Procedure section 377.30 states that "[a] cause of action that survives the death of the person entitled to commence an action or proceeding *passes* to the decedent's successor in interest . . . and an action may be commenced by the decedent's personal representative or, if none, by the decedent's successor in interest." (emphasis added). Nia'Amore and Kyse are suing for survival claims they say belong to them. They did not assert, and are not trying to settle, claims that belong to anyone else. We don't need to determine what all the claims are that Plaintiffs have, including whether they actually have any survival claims, to know what they have settled. To know what they have settled, we need to read the releases. The releases say what has been settled.

So, let's inquire into whether these settlement agreements are legally valid. If they are, that's the end of the matter.

**B.      Enforcement of Settlement Agreements**

**1.      Legal Standard**

A district court has the inherent power to enforce a settlement agreement in an action pending before it. *See TNT Marketing, Inc. v. Aaresti*, 796 F.2d 276, 278 (9th Cir. 1986). "The moving party has the burden of demonstrating that the parties formed a legally enforceable settlement agreement." *Woods v. Carey*, 2015 WL 7282749, *4 (E.D. Cal. Nov. 18, 2015), *report and recommendation adopted*, 2016 WL 11440086 (E.D. Cal. Jan. 15, 2016), *aff'd*, 715 F. App'x 694 (9th Cir. 2018). "The construction and enforcement of settlement agreements are governed by principles of local law which apply to interpretation of contracts generally." *Jeff D. v. Andrus*, 899 F.2d 753, 759 (9th Cir. 1989). This is true even if the underlying cause of action is based upon a federal statute. *Woods*, 2015 WL 7282749 at *4. Thus, the Court applies California law "regarding formation and interpretation of contracts in determining whether a legally enforceable settlement agreement was reached." *Id.*

United States District Court
Northern District of California

Under California law, the essential elements of a contract are: parties capable of contracting; a lawful object; the parties' consent; and sufficient cause or consideration. *Lopez v. Charles Schwab & Co., Inc.*, 118 Cal. App. 4th 1224, 1230 (2004) (citing Cal. Civ. Code § 1550). "An essential element of any contract is the consent of the parties, or mutual assent. Mutual assent usually is manifested by an offer communicated to the offeree and an acceptance communicated to the offeror." *Id.* (citing Cal. Civ. Code §§ 1550 and 1565). "The existence of mutual consent is determined by objective rather than subjective criteria, the test being what the outward manifestations of consent would lead a reasonable person to believe." *Weddington Prods., Inc. v. Flick*, 60 Cal. App. 4th 793, 811 (1998) (quoting *Meyer v. Benko*, 55 Cal. App. 3d 937, 942–43 (1976)).

If a valid agreement exists under state law, it must additionally meet two federal requirements. First, it must be a complete agreement. *Maynard v. City of San Jose*, 37 F.3d 1396, 1401 (9th Cir. 1994); *Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987). Second, both parties must have directly agreed to be bound by the terms of the settlement or have authorized their respective representatives to settle the dispute. *Harrop v. Western Airlines, Inc.*, 550 F.2d 1143, 1144–45 (9th Cir. 1977).

### 2.     Analysis

The Court finds that the settlement agreements are valid and enforceable. They were entered into by parties capable of contracting,[4] they have a lawful object, the parties consented,

---

[4] Kyse's settlement agreement states he is a minor (Cardinale Decl., Ex. 1), but Kyse declares under penalty of perjury that he turned 18 on February 3, 2025, approximately seven weeks before he signed the settlement agreement. ECF No. 177 (Kyse Monk Decl. ¶¶ 5-6). Kyse argues that because the settlement was *negotiated* before he turned 18, even though he *executed* the agreement after he turned 18, court approval of his settlement is required. The Court disagrees because once Kyse turned 18, he was no longer a minor and court approval was no longer necessary to compromise his claim. Kyse cites *Dacanay v. Mendoza*, 573 F.2d 1075, 1078 (9th Cir. 1978), which contains the statement: "Guam Code Civ. Proc. s 372 (1970) requires judicial approval of a settlement agreement negotiated by a guardian ad litem." But the cited provision merely states the common rule that a guardian ad litem for an infant or insane or incompetent person can compromise the same, subject to court approval. *Id. Dacanay* does not stand for the proposition that court approval is necessary to compromise the claim of an adult merely because the settlement negotiations took place shortly before the person turned 18. After all, an adult represented by counsel (as Kyse was here) is presumed to be competent and could have chosen not to sign the settlement agreement if he didn't want to. *See Robidoux v. Rosengren*, 638 F.3d 1177, 1181 (9th Cir. 2011) ("District courts have a special duty . . . to safeguard the interest of litigants who *are*

United States District Court
Northern District of California

there is sufficient consideration, there is mutual assent,[5] the contracts are complete agreements, and the parties agreed to be bound.  Except for the very different settlement amounts, the two settlement agreements are essentially identical.  In exchange for a monetary payment, Nia'Amore and Kyse agreed to sweeping releases of claims against Defendants.

Kyse tries to gin up a dispute, arguing:  "On January 23, 2025, Mr. Monk and Wellpath participated in a mediation before the Hon. Raul Ramirez, during which settlement discussions occurred and an agreement was reached.  At that mediation, Mr. Monk asserted only his individual wrongful death claims and did not settle or assert any survival claims on behalf of the Estate, recognizing that neither he had authority as a personal representative or administrator of the Decedent's Estate nor did Ms. Monk."  Opp'n at 3.

The Court disagrees.  Regardless of what "authority" Kyse had, or thought he had, what he *settled* is clear:  He "completely release[d] and forever discharge[d]" Defendants "from any and all past, present or future claims, demands, obligations, actions, causes of action, rights, damages, costs, expenses and compensation of any nature whatsoever, whether based on a tort, contract, constitutional claim, or other theory of recovery, which Plaintiff Intervenor has, or which may hereafter accrue or otherwise be acquired, on account of, or may in any way grow out of the Incident, including, without limitation, any and all known or unknown claims, which allegedly resulted from the alleged acts of Defendant, and/or which are or could have been alleged or asserted against Defendant in the Action."  Kyse settled every claim he could ever possibly assert against Defendants arising out of the incident, including those "which may hereafter accrue or otherwise be acquired."  If the probate court appoints him the decedent's personal representative, he settled any claims he can assert in that capacity too.

It's not true that uncertainty, doubt, or even very strong disagreement about a Plaintiff's ability to assert a claim means that there is a problem with the settlement agreement.  It's common in litigation for the two sides to have very different views about what the plaintiff is entitled to sue

---

minors," not who *were* minors.) (emphasis added).
[5] Defendants have now executed the settlement agreements.  ECF No. 176 (Second Cardinale Decl., Exs. B & C).

over and what is embraced in those claims.  The scope of the settlement agreement is instead measured by the release, because litigants can draft around uncertainty and sometimes have to.  The release Kyse agreed to is broad and sweeping.  It definitely includes any survival claims he could or ever will be able to assert arising out of the incident.  And the same is true of Nia'Amore's release.

These settlement agreements are valid contracts.  They are binding and enforceable.

## IV.   CONCLUSION

For the reasons stated above, the Court expresses no opinion on the standing of Plaintiffs as successors-in-interest and **GRANTS** Defendants' motion to confirm the enforceability of the settlement agreements.

**IT IS SO ORDERED.**

Dated: May 23, 2025

THOMAS S. HIXSON
United States Magistrate Judge

United States District Court
Northern District of California